```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON
```

MOHAMMED I. RANAVAYA, M.D.,

    Plaintiff

v.                                CIVIL ACTION NO. 2:05-0109

WORK LOSS DATA INSTITUTE, LLC,

    Defendant

## MEMORANDUM OPINION AND ORDER

Pending are defendant's motions (1) to dismiss filed February 16, 2005, and (2) to strike filed April 7, 2005.[1]

**I.**

Plaintiff Mohammed I. Ranavaya, M.D., is a West Virginia resident. (Not. of Remov. ¶ 1.) Defendant Work Loss Data Institute, LLC, is a Texas corporation with its principal place of business in California. (Id. ¶ 2.)

---

[1] Defendant moves to strike plaintiff's surreply as not contemplated by the Local Rules of Civil Procedure. In view of the importance of a complete factual and legal record to facilitate a ruling on the pending motion, the court will consider the surreply. For this same reason, the court overrules defendant's objection to plaintiff's late filing of his response memorandum. Plaintiff is strongly cautioned to adhere to the applicable rules in all future filings.

Plaintiff is a physician in Logan County. (Aff. of Mohammed I. Ranavaya, M.D. ¶¶ 1-2.) He specializes in disability evaluation. (Id. ¶ 2.) Plaintiff appears to be a recognized authority in the area, having lectured at both national and international disability seminars. (Id. ¶ 3.)

In fall 2000, plaintiff lectured at a workers' compensation seminar in Texas. (Id. ¶ 4.) While in Texas, he was approached by defendant's representatives, who discussed his interest in serving as Senior Medical Editor for its Official Disability Guidelines Manual ("ODG"). (Id. ¶ 5.) Defendant does not maintain an office in West Virginia, nor does it regularly transact business here. (Def.'s Memo. in Supp. at 2.) Indeed, it has filled only one order in the state, amounting to $195.00 in revenue. (Id.)

Following plaintiff's return to West Virginia, however, he negotiated the majority of the parties' Partnership/Royalty Agreement and Confidentiality/Non-Disclosure Agreement ("agreements") with defendant over the phone. (Ranavaya aff. ¶ 6.) On August 13, 2001, the parties reduced the agreements to writing and signed them. (Def.'s Memo. in Supp. at 2.) Plaintiff executed the agreements in West Virginia. (Ranavaya aff. ¶ 8.)

2

Plaintiff's affidavit supporting the exercise of jurisdiction provides further details about the agreements and their performance:

> 7. When [defendant] entered the agreements with me, it knew that I would be performing my duties under the contract in West Virginia.
>
> . . . .
>
> 9. My duties under the agreements included recruiting internationally recognized physician members for [the] ODG editorial board, reviewing the "Best Practice" Guidelines portion of the ODG, providing editorial feedback, [offering] corrections or additions to the "Best Practice" Recommendations, writing the Foreword to the Seventh Edition of the ODG, as well as other responsibilities.
>
> 10. I performed the aforementioned duties and responsibilities in West Virginia.
>
> 11. [Defendant] sent my correspondence and compensation to Chapmanville, WV.
>
> 12. ODG on numerous occasions solicited . . . business form [sic] the state of West Virginia Worker's [C]ompensation Commission and asked me to solicit the said business and provide assistance.

(Ranavaya aff. ¶¶ 7-12.)

In May 2003, defendants attempted to cancel the agreements. (Def.'s Memo. in Supp. at 3.) On September 21, 2004, plaintiff instituted this action in the Circuit Court of Logan County. Plaintiff's complaint summarizes the nature of his claims:

3

> This is an action for breach of contract related to both a Partnership/Royalty Agreement and a Confidentiality/Non-Disclsoure Agreement entered into by and between the Work Loss Data Institute, LLC ("WLDI") and Dr. Ranavaya. This is also an action for conversion of confidential business information. This action seeks legal and equitable relief including monetary damages and an accounting.

(Compl. ¶ 1.)

II.

A.   Personal Jurisdiction and Venue Evidentiary Standards

A plaintiff confronted with a Rule 12(b)(2) motion bears the burden of proving the existence of personal jurisdiction by a preponderance of the evidence. In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997). "When a district court rules on personal jurisdiction without holding an evidentiary hearing, we view the facts in the light most favorable to the plaintiff and determine de novo whether he has made a prima facie showing of personal jurisdiction." Mitrano v. Hawes, 377 F.3d 402, 406 (4th Cir. 2004). Likewise, "[t]o survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a prima facie showing of venue." Id. at 405.

B.  Analysis of Personal Jurisdiction

Rule 4(k)(1)(A) authorizes the exercise of personal jurisdiction over a defendant in the manner provided by state law.  <u>Diamond Healthcare of Ohio, Inc., v. Humility of Mary Health Partners</u>, 229 F.3d 448, 450 (4th Cir. 2000).  Typically, courts conduct a two-step inquiry to determine whether personal jurisdiction is appropriate, analyzing (1) whether the forum's long-arm statute authorizes service of process on the defendant, and (2) whether the service of process comports with the Due Process Clause.[2]  <u>Elliot Machine Corp. v. John Holland Party Ltd.</u>, 995 F.2d 474, 477 (4th Cir. 1993).

Our court of appeals has concluded that West Virginia's long arm statute is "coextensive with the full reach of due process . . . ."  <u>In re Celotex</u>, 124 F.3d at 627 (citing <u>Pittsburgh Terminal Corp. v. Mid Allegheny Corp.</u>, 831 F.2d 522,

---

[2]There are two types of personal jurisdiction.  "General jurisdiction" exists where a defendant's "systematic and continuous" contacts with the forum are such that it may be called to defend an action not related to those contacts.  <u>Federal Ins. Co. v. Lake Shore, Inc.</u>, 886 F.2d 654, 660 (4th Cir. 1989).  "Specific jurisdiction" exists where a defendant has minimum contacts with the forum state and the action bears a sufficient nexus to those contacts.  <u>Id.</u>  It would appear defendant lacks the systematic and continuous contacts that would support exercise of general jurisdiction.  The court thus confines its analysis to the exercise of specific jurisdiction.

5

525 (4th Cir. 1987).  Accordingly, the court need only determine whether the exercise of personal jurisdiction here is consistent with the Due Process Clause.

The Due Process Clause provides a defendant with a liberty interest to not be haled into a foreign forum with which he has "established no meaningful 'contact, ties, or relations'" and, therefore, due process requires that the defendant "have 'fair warning that a particular activity may subject [[it]] to the jurisdiction of a foreign sovereign.'"  <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 471-72 (1985) (quoting <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 319 (1945)).  The touchstone of the due process inquiry concerns whether the non-resident defendant has sufficient minimum contacts with the forum state such that the "'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" <u>Mitrano</u>, 377 F.3d at 406 (quoting <u>International Shoe Co.</u>, 326 U.S. at 316).

"Minimum contacts exist where the defendant 'purposefully direct[s]' its activities toward the residents of the forum."  <u>Elliot Machine Corp.</u>, 995 F.2d at 477 (quoting <u>Burger King Corp.</u>, 471 U.S. at 472).  The defendant need not be physically present in the forum.  <u>Id.</u> at 476.  Instead, a

defendant purposefully directs it activities toward the forum "where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum[.]" Burger King Corp., 471 U.S. at 475. However, "[t]he 'unilateral activity of another party or a third person' cannot satisfy the 'minimum contacts' requirement of due process." Federal Ins. Co., 886 F.2d at 659 (quoting Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 417 (1983)). "The relevant question is not where the contacts predominate, but only whether enough minimum contacts exist that the district court's assumption of specific jurisdiction satisfie[s] due process." English & Smith v. Metzger, 901 F.2d 36, 39 (4th Cir. 1990).

With respect to interstate contractual obligations, the Supreme Court has observed that "parties who 'reach out beyond one state and create continuing obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King Corp., 471 U.S. at 473. Indeed, a single contractual relationship may support the exercise of personal jurisdiction. McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957). Standing alone, however, the mere existence of a single contract with a non-resident does not confer personal jurisdiction.

Burger King Corp., 471 U.S. at 478 ("[i]f the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer is that it cannot.").

Rather, the contract relied upon must have a substantial connection to the forum state. Chung v. Nana Development Corp., 783 F.2d 1124, 1128 (4th Cir. 1986). "The factors considered in determining whether the defendant purposefully established minimum contacts with the forum include 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" Id. (quoting Burger King Corp., 471 U.S. at 479).

Treating plaintiff's allegations as true, defendant, with knowledge of his West Virginia citizenship, (1) approached plaintiff to serve on the editorial board of its ODG, (2) negotiated the majority of the parties agreements with him while he resided in West Virginia, (3) knew he would perform his obligations under the parties' agreement in this state, (4) knew some of those obligations included soliciting business for defendant in West Virginia. As noted in Burger King, "parties who 'reach out beyond one state and create continuing obligations with citizens of another state' are subject to regulation and

8

sanctions in the other State for the consequences of their activities." Burger King Corp., 471 U.S. at 473.

In view of the extensive obligations plaintiff accepted under the contract, including solicitation of the West Virginia Worker's Compensation Commission on defendant's behalf, the contract had a substantial connection to this state. Defendant knew West Virginia was one of the locales for the parties' negotiations. Further, it must have understood, given plaintiff's residency, that a substantial part of his performance of the contract would take place in this forum. Importantly, defendant also sent correspondence to plaintiff in this state, along with his regular compensation.

Based on the foregoing, the court concludes plaintiff has made a prima facie showing defendant purposefully availed itself of this jurisdiction and that it had sufficient minimum contacts with the forum to justify plaintiff's action here under the agreements.

Minimum contacts, of course, provide a basis for personal jurisdiction "only if they satisfy the concept of 'fair play and substantial justice.'" Elliot Machine Corp., 995 F.2d at 477 (citation omitted). In assessing the reasonableness of

haling a non-resident defendant before a remote forum, our court of appeals has identified the following considerations:

> A court should consider the burden on the defendants, the interests of the forum state, and the plaintiff's interest in obtaining relief in the forum. The court also should weigh "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies."

Federal Ins. Co., 886 F.2d at 661 (quoting Asahi Metal Ind. Co., LTD. v. Superior Court, 480 U.S. 102, 113 (1987)).

Applying these factors, defendant does not suggest how many witnesses or client representatives will need to travel here from California for trial. Defendant is represented by counsel in Clarksburg, West Virginia, facilitating appearances at any local hearings. Regardless of the site of trial, plaintiff's travel obligations, which will require him to depose witnesses who reside thousands of miles away, would seem to be no less than that visited upon defendant, who will likely need to depose at least one critical witness, the plaintiff, in this forum.

The forum state's interest is substantial. West Virginia has a considerable interest in "adjudicating the action insofar as it seeks to ensure the economic health of its citizens and the fair resolution of their disputes." Elliot Machine Corp.

<u>v. John Holland Party Ltd.</u>, 995 F.2d at 470.  One allegation in this action is that plaintiff has not been paid the royalties to which he is entitled under one of the agreements.  As noted, these payments were at one time transmitted regularly to him in this state.

Plaintiff's interest in obtaining relief in this forum is also substantial.  From plaintiff's perspective, he was wronged in this district and he should be permitted to avail himself of his home forum's resulting protections to remediate the harm.  The alternative for plaintiff is to sue in a court located across the United States, hire unknown counsel in that locale, and undertake more onerous travel obligations than those to which he is already subject.

In view of these considerations, the court concludes that subjecting defendant to suit in West Virginia does not contravene traditional notions of "fair play and substantial justice."  The court, accordingly, ORDERS that defendant's motion to dismiss for lack of personal jurisdiction be, and it hereby is, denied.[3]

---

[3]**The court's jurisdictional analysis centers on plaintiff's claim for breach of the Partnership/Royalty Agreement.  Reduced to its essence, the parties' dispute involves a business**

(continued...)

C.   Analysis of Venue

                    1.   Dismissal

     Defendant next asserts venue is improper.  It does not, however, specify the venue provision upon which it relies.  The statutory basis for venue in this action is 28 U.S.C. § 1441(a), not the general venue statute found at 28 U.S.C. § 1391.  In Polizzi v. Cowles Magazines, Inc., 345 U.S. 663 (1953), the Supreme Court observed as follows:

>     Section 1391(a) limits the district in which an action

---

[3](...continued)
relationship gone awry, with several negative repercussions resulting therefrom, including defendant's alleged disclosure and conversion of confidential business information.  The contract and conversion claims thus arise out of the same common nucleus of operative facts.
     In view of the fact that the court may properly exercise personal jurisdiction over the defendant as to at least one of the contractual claims, the court is likewise empowered to adjudicate the conversion claim and the remaining contractual claim, given the common nucleus of operative facts. 4A Charles A Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.7 (3rd. ed. 1999); see ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 628-29 (4th Cir. 1997) ("Our recognition of pendent personal jurisdiction should present no constitutional objection any more serious than did pendent jurisdiction involving the court's subject matter jurisdiction. Once a court has a constitutional case, in the Article III sense, properly before it, service by a court sufficient to assert personal jurisdiction over a defendant by any authorized mechanism consistent with due process may be held to apply to the entire constitutional case.").

> may be 'brought.' Section 1391(c) similarly limits the district in which a corporation may be 'sued.' This action was not 'brought' in the District Court, nor was [Defendant] 'sued' there; the action was brought in a state court and removed to the District Court. Section 1441(a) expressly provides that the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place such action is pending.'

Id. at 666; Ferrell v. Grange Ins., 354 F. Supp.2d 675, 679-80 (S.D. W. Va. 2005).

Plaintiff instituted this action in the Circuit Court of Logan County. Logan County is within the Southern District of West Virginia. Defendant properly removed the action to this court. Venue is thus proper under section 1441(a). The court, accordingly, ORDERS that defendant's motion to dismiss for improper venue be, and it hereby is, denied.

### 2. Transfer

In the alternative, defendant moves for transfer of this action to the appropriate federal district court in California pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). Title 28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest

13

of justice, transfer such case to any district or division in which it could be brought." Id.  Our court of appeals has held that 28 U.S.C. § 1406(a) authorizes the transfer of a case "for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district."  Porter v. Groat, 840 F.2d 255, 258 (4th Cir. 1988).

First, inasmuch as the exercise of personal jurisdiction is appropriate and venue is laid appropriately, there is no impediment to disposition in this district.  Section 1406(a) is thus inapplicable.

Second, section 1404(a) provides "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) vests "discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Organization v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

14

The movant shoulders the burden of demonstrating the propriety of transfer.  <u>AFA Enters., Inc. v. American States Ins. Co.</u>, 842 F. Supp. 902, 909 (S.D. W. Va. 1994) (citations omitted).  The plaintiff's choice of forum is accorded considerable weight, however, and transfer will be denied where it would merely shift the inconvenience from one party to the other.  <u>Id.</u> (citing <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)).

The statute requires the balancing of "a number of case-specific factors."  <u>Id.</u>  The factors include (1) the plaintiff's choice of forum, (2) the ease of access to sources of proof, (3) availability of compulsory service, (4) the local interest in adjudicating the action, (5) obstacles to a fair trial, (6) court congestion, and (7) avoidance of unnecessary conflicts of law.  <u>Koehring Co. v. Hyde Construction Co.</u>, 324 F.2d 295, 296 (5th Cir. 1963) (citing with approval the factors identified in <u>Gulf Oil Corp.</u>, 330 U.S. 351, 358 (1947), for application of the doctrine of forum non conveniens as appropriate considerations in assessing a motion made pursuant to § 1404(a)); <u>see also</u> 15 Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> §§ 3847-54 (2d ed. 1986) (discussing factors).

As noted, this action is based primarily on agreements negotiated simultaneously in California and West Virginia. Plaintiff executed the agreements and performed his resulting contractual obligations in this state. Plaintiff then chose this forum to prosecute the action. The parties have offered little in the way of specifics concerning the number of out of state witnesses and documents necessary for trial. Regarding compulsory service, the out-of-state witnesses presumably are employed by defendant and would be directed to testify in the course of their employment. As noted, the forum state has an interest in the litigation being resolved here. Further, defendant has offered nothing in the way of obstacles to a fair trial, court congestion, or avoidance of unnecessary conflicts of law.

In sum, defendant has not overcome the considerable weight accorded to plaintiff's forum choice. In essence, the transfer would simply shift defendant's perceived inconvenience to its adversary. Under such circumstances, transfer is inappropriate.

The court, accordingly, ORDERS that defendant's motion to transfer be, and it hereby is, denied.

III.

Based upon the foregoing, the court ORDERS as follows:

1. Defendant's motion to dismiss for lack of personal jurisdiction be, and it hereby is, denied;

2. Defendant's motion to strike be, and it hereby is, denied;

3. Defendant's motion to dismiss for improper venue be, and it hereby is, denied; and

4. Defendant's motion to transfer venue be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: August 2, 2005

John T. Copenhaver, Jr.
United States District Judge

17